## WING v. SEDGWICK.

### (District Court, D. Massachusetts. August 28, 1923.)

### No. 483.

**Appeal and error ⬅1195(1)—Law stated on appeal controls at subsequent trial.**
    Law applicable to facts of case stated in opinion on appeal from order sustaining a demurrer must control in consideration of questions presented at trial after remand.

At Law. Action by Thomas E. Wing, trustee, against Alexander Sedgwick. Judgment for defendant.

Coolidge & Hight, of Boston, Mass., and Wing & Russell, of New York City, for plaintiff.

Whipple, Sears & Ogden, of Boston, Mass., for defendant.

BREWSTER, District Judge. In this case a demurrer to plaintiff's declaration was sustained in this court. 244 Fed. 199. Upon writ of error to the Circuit Court of Appeals, this judgment was reversed (see 254 Fed. 5, 165 C. C. A. 415), and the case was remanded to this court for further proceedings not inconsistent with the opinion of the Circuit Court of Appeals.

Jury trial was waived and the case submitted upon depositions and copies of exhibits. The law applicable to the facts of the case has been stated in the opinion of the Circuit Court of Appeals, and must control in the consideration of questions presented at the trial.

The case has many ramifications, and any comprehensive statement of facts would unnecessarily incumber the record, in view of the fact that the earlier opinions contain elaborate statements of the facts alleged and of the pertinent provisions of the agreements involved. With the general statement that the material allegations of plaintiff's amended declaration are sustained by the evidence, except those relating to ratification by defendant, it may be sufficient to briefly review the im-

---
⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

portant facts which lead me to the conclusion based upon my interpretation of the law, as stated by the Circuit Court of Appeals, that the plaintiff is not entitled to recover in these proceedings.

The defendant with others became parties to an underwriting agreement, dated September 1, 1907, which contemplated the underwriting of 8,000 shares of the capital stock of the Refugio Syndicate, a New Jersey corporation, with a capital stock of $1,000,000, divided into 10,000 shares, of $100 each. The underwriters had already subscribed and paid for 2,000 shares of stock in the corporation. By the terms of the underwriting agreement the defendant was not required to pay, on account of his subscription, before January 1, 1909, except under certain conditions not now important.

The syndicate managers, parties to the underwriting agreement of September 1, 1907, presuming to act under the agreement, on September 30, 1907, entered into a contract with the corporation whereby the managers agreed to take and pay for at par 8,000 shares of the capital stock, the price therefor to be paid in cash in installments; the last installment of $100,000 falling due March 1, 1908. On the same day the corporation issued to the managers two certificates, representing these shares of stock, which, with certificates representing 2,000 shares, which the managers had received from the subscribers pursuant to the terms of the agreement, were put in a voting trust, and the managers received voting trust certificates representing 10,000 shares. It is obvious that the parties to the underwriting agreement expected and intended that the managers should borrow on the credit of the subscribers the money with which the stock was to be paid in, and that they were to receive a lawful issue of fully paid capital stock.

The fourth clause of the underwriting agreement is as follows:

"The syndicate managers are authorized by the subscribers, severally and not jointly, to borrow for the account of each subscriber, from any lender or lenders, a sum not to exceed in principal indebtedness his cash subscription hereto, for such period, including agreed renewals, as shall make the principal of said loan or loans due not earlier than March 1, 1909, upon such terms as the syndicate managers may be able to arrange with the lenders, and the syndicate managers are authorized by each of the subscribers hereto severally to pledge for said loan or loans his subscription hereto duly assigned to the satisfaction of the lender or lenders, and all of the capital stock hereby underwritten or hereby assigned as aforesaid, with such power to the syndicate managers of withdrawal or substitution as they may deem wise. The note or other obligation of the syndicate managers shall be binding upon the subscribers and their assigns in favor of the lender and its assigns, and without the duty on the part of such lender to inquire into the performance by the syndicate managers of any of their obligations hereunder, and no assignment or other change in the interest or obligations to the syndicate of any subscribers shall release him from his obligations to any lender or lenders, unless made with the written consent of such lender or lenders."

It appears that the managers were unable to borrow money to meet the installments, and nothing was paid under their agreement with the Refugio Syndicate prior to March 1, 1908, the date of the last installment. The managers and the company conceived a plan of borrowing money by the issuing of participation certificates in a note of the managers, which was to be secured by collateral pledged with a trustee, and, pursuant to that plan, the managers issued a note for $800,000,

dated March 2, 1908, payable on the 1st day of March, 1909. The note purports to be issued under and by virtue of the terms of the underwriters' agreement. To secure this note the managers assigned the underwriting agreement and transferred voting trust certificates representing 10,000 shares in the Refugio Syndicate to the Guardian Trust Company, as trustee for the holder of said note and of any person holding any interest therein. The note for $800,000 was delivered to the Refugio Syndicate, and was offered and accepted as payment for the 8,000 shares which the managers had agreed to purchase on September 30, 1907.

The Refugio Syndicate deposited this note with the Guardian Trust Company under an agreement which provided for the issuance by the Guardian Trust Company of participation certificates therein. Participation certificates were issued to the amount of $538,500.

On or about September, 1910, the amount of participation certificates then outstanding aggregated $290,608. The note, in which the holders of participation certificates were interested, was long overdue, and the holders were demanding payment. In order to meet these demands for payment, the Refugio Syndicate borrowed from the Consolidated Gold Fields of South Africa, Limited, $300,000 upon its promissory note for that amount. This money was turned over to the Guardian Trust Company, which applied $275,144.70 for the purpose of canceling participation certificates. The balance was paid into the treasury of the Refugio Syndicate. All the outstanding participation certificates were surrendered for cancellation, the agreement under which they had been issued was canceled, and the note delivered by the Guardian Trust Company to the Refugio Syndicate. The syndicate proceeded to issue participation certificates in the $800,000 note to the amount of $26,240, which participation certificates were received in lieu of certificates originally issued by the Guardian Trust Company, and which had been surrendered for cancellation at the same time the other holders of participation certificates had been paid off. The Refugio Syndicate thereupon assigned with other security the note, subject to $26,240 of participation certificates as collateral to its note of $300,000 above referred to. At the time of the cancellation of the depositary agreement, so called, under which participation certificates were issued by the Guardian Trust Company, the trust company resigned as trustee under the trust created for the purpose of securing the $800,000 note, and the plaintiff was duly appointed its successor, in accordance with the terms of the trust agreement.

The plaintiff, as such trustee and as assignee of the underwriting agreement, brings this suit against the defendant, as subscriber, to recover the unpaid balance of his subscription.

The defendant's subscription was for $9,200, upon which he has paid in response to calls $2,300, leaving a balance of $6,900 unpaid. He holds a participation certificate issued by the Refugio Syndicate for $3,017.60.

The evidence does not warrant the finding that the defendant ratified any unauthorized acts of the managers, or that he was induced by fraud to enter into this highly speculative venture, or that there has been any

accord and satisfaction. The only question is whether, upon the facts as above set forth and the law as laid down in the opinion of the Circuit Court of Appeals in this case, the subscribers to the underwriting agreement are liable to the plaintiff upon the obligation issued by the syndicate managers.

This court has held that the note and pledge were wholly unauthorized, and the Circuit Court of Appeals has held that they were authorized only to a limited extent.

The earlier opinions in this case definitely settle the proposition that the 8,000 shares of capital stock of the Refugio Syndicate were not lawfully issued to the managers on September 30, 1908; that the managers were not authorized by the syndicate agreement to give to the Refugio Syndicate a note in payment for said shares, and that, except so far as the company received the proceeds of participation certificates, these shares were never legally issued. In view of the statutes of New Jersey, there can be no question regarding the soundness of this law.

Therefore I regard it as already settled in this case that neither the Refugio Syndicate, as holder of said $800,000 note, nor the plaintiff, as trustee for the syndicate or its assigns, could hold the subscribers to the underwriting agreement liable thereon. The only theory upon which the Circuit Court of Appeals could have reached the conclusion it did respecting the partial validity of the note is, in my opinion, that the depositing of it with the Guardian Trust Company and the issuing against it of participation certificates were all the part of a plan adopted by the managers for borrowing money, and, to the extent that money was so borrowed and reached the Refugio Syndicate, the obligation issued by the managers under the underwriting agreement is held to be valid. This appears from the following taken from the opinion:

"The declaration alleges that participation certificates in the $800,000 note were issued by the Guardian Trust Company to the Refugio Syndicate, under which borrowings were had, and that the suit was brought by the trustee for the benefit of the holders of the participations and the note. Such being the case, we are of the opinion that, so far as money was obtained on participation certificates by the Refugio Company under the arrangement above set forth, borrowings were made by the managers within the terms of the underwriting agreement, and that the stock issued by the Refugio Syndicate to the amount equivalent to the money thus received was full-paid stock."

It will be observed that the court distinctly referred to the participation certificates issued by the Guardian Trust Company under the arrangement adopted, if not conceived, by the syndicate managers, but it appears clear from the evidence that at the time of the institution of this suit there were no such participation certificates outstanding. All the participations issued by the Guardian Trust Company under the arrangement above referred to had been surrendered for cancellation, and the agreement under which the certificates had been issued had been canceled by the parties to it. Certificate holders, to the aggregate amount of $275,144.70, had received cash which had been repaid by the Refugio Syndicate out of funds borrowed for that purpose. The remaining holders surrendered their certificates of participation which they had received from the Guardian Trust Company under the arrangement aforesaid, apparently relying on promises of new certificates

to be issued later by the Refugio Syndicate which were, in fact, issued to these holders.

It is true the Refugio Syndicate received the net proceeds of the participation certificates as they were issued by the Guardian Trust Company, but when it also appears that this money, to the extent of $275,144.70, was subsequently repaid by the syndicate to those who had loaned upon the certificates it cannot be said that the managers borrowed or the syndicate obtained, on participation certificates, money which would constitute payment for stock to be issued for cash.

When the participation certificates, issued by the Guardian Trust Company, had been surrendered, and the agreement under which they had been issued canceled, the note was redelivered to the Refugio Syndicate, and this transaction, in my opinion, put the Refugio Syndicate in the same position it would have been in if no participation certificates had ever been issued. It was the holder of a note, then long overdue, which it could not enforce against the subscribers to the underwriting agreement or against the collateral pledged to secure it, on the ground that neither the note nor the pledge was authorized by the terms of the underwriting agreement.

We come now to the question whether, under these circumstances, the holders of participation certificates issued by the Refugio Syndicate in this dishonored note would have any better rights than the syndicate. I think not. The Circuit Court of Appeals has definitely decided that, to the extent the Consolidated Gold Fields of South Africa, Limited, loaned upon this note as collateral, the transaction did not constitute a borrowing by the managers within the contemplation of the underwriting agreement, and that the underwriting subscription would not be collateral thereto.

After referring to the pledging of the $800,000 note to the Consolidated Gold Fields of South Africa, Limited, as security for the $300,000 note of the Refugio Syndicate, the Circuit Court of Appeals in the opinion states:

"This transaction to the extent that borrowings were had on the $800,000 note, if entered into with the consent of the managers and for the purpose of paying for the stock, would not contravene the authority conferred upon them by the underwriting agreement, but, to the extent that it put it in the power of the Gold Fields Company to acquire an interest in the $800,000 note beyond the sum so loaned it would be in contravention of the underwriters' agreement, and whether done with or without the consent of the managers, and for the purpose of paying for the stock, the Gold Fields Company would acquire nothing in the $800,000 note over and above the sum actually loaned. It is not alleged, however, that the $300,000 was borrowed to pay for the stock and with the managers' consent. In the absence of such allegations this loan could not be regarded as a borrowing by the managers within the contemplation of the underwriting agreement, and the underwriting subscriptions would not be collateral thereto."

There is no evidence tending to show that the issuing of participation certificates by the Refugio Company against the note of the managers was part of any plan adopted by the managers acting under the underwriting agreement. The situation, so far as it affected the certificate holders, stated in another way, is this: They held participation certificates which, according to the views of the Circuit Court of Appeals,

were secured by a valid and authorized pledge of collateral, and, at the request of the Refugio Syndicate, they elected to give up these certificates and accept in exchange for them certificates that were not so secured. The Circuit Court of Appeals concluded that the plaintiff's declaration stated a cause of action in so far as recovery was sought on behalf of owners, legal or equitable, of participation certificates issued for sums loaned upon them. It follows, I take it, that the plaintiff would not be entitled to recover, if it appeared that there were no owners, legal or equitable, of participation certificates issued for sums loaned upon them.

As above indicated, I have proceeded on the theory that the Circuit Court of Appeals refers to certificates of participation issued as a part of the plan adopted by the managers for the purpose of borrowing money to be used by them in paying in cash for shares of the capital stock of the Refugio Syndicate. I find, upon all the evidence before me, that there are no owners, legal or equitable, of such participation certificates.